

UNITED STATES DISTRICT COURT AUG 27 2008
EASTERN DISTRICT OF NEW YORK BROOKLYN OFFICE

-------------------------------------------------------x
SHAWN LLOYD, individually and as      :
Administrator of the Estate of QUIYANA M.
PIERCE-LLOYD, deceased,      :

       Plaintiff,

       :

v.      :      **08** No. ___ **3506**

FORD MOTOR COMPANY, a foreign      :      **COMPLAINT**
Corporation; SEARS, ROEBUCK AND
CO., a New York corporation, SEARS      :      Plaintiff Demands a Trial by Jury
HOLDING MANAGEMENT
CORPORATION. A foreign corporation,      :
BFS RETAIL & COMMERICAL
OPERATIONS, LLC, a foreign      :      **WEXLER, J**
Corporation d/b/a FIRESTONE COMPLETE
AUTO CARE and MMG MELVILLE      :
SERVICE STATION CORP., a New York
Corporation d/b/a SUNOCO,      :      **ORENSTEIN, M.J.**

       Defendants.      :

         :

-------------------------------------------------------x

## COMPLAINT

The Plaintiff, SHAWN LLOYD as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, by her attorneys, Kreindler & Kreindler, LLP, brings action for wrongful death damages against the Defendants, FORD MOTOR COMPANY, a foreign Corporation, ("FORD"), SEARS, ROEBUCK AND CO., a New York corporation, SEARS HOLDING MANAGEMENT CORPORATION, a foreign corporation, ("SEARS"), BFS RETAIL & COMMERICAL OPERATIONS, LLC, a foreign Corporation d/b/a FIRESTONE COMPLETE AUTO CARE ("BFS"), and MMG MELVILLE SERVICE STATION CORP., a New York Corporation d/b/a SUNOCO, ("MMG"), and states:

## Parties and Jurisdiction

1.       Plaintiff, SHAWN LLOYD, is the natural mother of QUIYANA M. PIERCE-LLOYD, a minor, and was at all times material hereto a citizen of the State of Virginia, was residing in Virginia with her daughter QUIYANA M. PIERCE-LLOYD, a minor, who was also a citizen of Virginia, and was issued Letters of Administration appointing her the Administrator of the Estate of QUIYANA M. PIERCE-LLOYD in Virginia. (A copy of the Certificate of Qualification is attached hereto as Exhibit "A").

2.       Defendant, FORD, submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, at all times material to this cause of action, the following acts:

> (a)       Conducting and engaging in substantial business and other activities in New York by selling and/or servicing defective vehicles, including the Subject Vehicle, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers and brokers.   Such vehicles were used by consumers in New York in the ordinary course of commerce and trade;

> (b)       Committing a tortious act within this state by selling and delivering defective vehicles, including the Subject Vehicle, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such vehicles were used by consumers in New York in the ordinary course of commerce and trade;

> (c)       Causing injury to persons in New York, including QUIYANA PIERCE-LLOYD at or about the time said injuries occurred, Defendant, FORD, engaged in solicitation activities in New York to promote the sale, consumption, use, maintenance and repair of its vehicles, and, products serviced and manufactured by FORD, were consumed within New York in the ordinary course of commerce, and FORD was engaged in substantial and not isolated activity within this state;

(d)     Selling and delivering defective vehicles to persons, firms, or corporations via its distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that its vehicles would be shipped in interstate commerce and would reach the market of New York users or consumers; and

(e)     Voluntarily qualifying to conduct business in this state by registering with the New York Department of State and designating a resident agent for service of process in New York.

3.      Defendant, SEARS, submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, at all times material to this cause of action, the following acts:

(a)     Conducting and engaging in substantial business and other activities in New York by selling and/or servicing defective vehicles, including the Subject Tire, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers and brokers. Such vehicles were used by consumers in New York in the ordinary course of commerce and                                                      trade;

(b)     Causing injury to persons in New York, including QUIYANA PIERCE-LLOYD at or about the time said injuries occurred, Defendant, SEARS, engaged in solicitation activities in New York to promote the sale, consumption, use, maintenance and repair of its tires, and, products serviced and sold by SEARS, were consumed within New York in the ordinary course of commerce, and SEARS was engaged in substantial and not isolated       activity       within       this       state;

(c)     Selling and delivering defective tires to persons, firms, or corporations via its distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that its vehicles would be shipped in interstate commerce and would reach the market of New York users or consumers; and

(d)     Voluntarily qualifying to conduct business in this state by registering with the New York Department of State and

designating a resident agent for service of process in New York.

4.    Defendant, BFS, submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, at all times material to this cause of action, the following acts:

(a)    Conducting and engaging in substantial business and other activities in New York by selling and/or servicing defective vehicles, including the Subject Tire, to persons,        firms, or corporations in this state via its distributors, dealers, wholesalers and brokers. Such vehicles were used by consumers in New York in the ordinary course of commerce and trade;

(b)    Committing a tortious act within this state by selling and delivering defective tires, including the Subject        tire, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such tires were used by consumers in New York in the ordinary course of commerce and trade;

(c)    Causing injury to persons in New York, including QUIYANA PIERCE-LLOYD at or about the time said injuries occurred, Defendant, BFS, engaged in solicitation activities in New York to promote the sale, consumption, use, maintenance and repair of its tires, and, products serviced and sold by BFS, were consumed within New York in the ordinary course of commerce, and BFS was engaged in substantial and not isolated activity within this state;

(d)    Selling and delivering defective tires to persons, firms, or corporations via its distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that its vehicles would be shipped in interstate commerce and would reach the market of New York users or consumers; and

(e)    Voluntarily qualifying to conduct business in this state by registering with the New York Department of State and designating a resident agent for service of process in New York.

5. Defendant, MMG, submitted itself to the jurisdiction of this Honorable Court by doing, personally or through its agents, at all times material to this cause of action, the following acts:

(a) Conducting and engaging in substantial business and other activities in New York by selling and/or servicing defective vehicles, including the Subject Tire, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers and brokers. Such vehicles were used by consumers in New York in the ordinary course of commerce and trade;

(b) Committing a tortious act within this state by selling and delivering defective tires, including the Subject tire, to persons, firms, or corporations in this state via its distributors, dealers, wholesalers, and brokers. Such tires were used by consumers in New York in the ordinary course of commerce and trade;

(c) Causing injury to persons in New York, including QUIYANA PIERCE-LLOYD at or about the time said injuries occurred, Defendant, MMG, engaged in solicitation activities in New York to promote the sale, consumption, use, maintenance and repair of its tires, and, products serviced and sold by MMG, were consumed within New York in the ordinary course of commerce, and MMG was engaged in substantial and not isolated activity within this state;

(d) Selling and delivering defective tires to persons, firms, or corporations via its distributors, dealers, wholesalers, and brokers, with knowledge or reason to foresee that its vehicles would be shipped in interstate commerce and would reach the market of New York users or consumers; and

(e) Voluntarily qualifying to conduct business in this state by registering with the New York Department of State and designating a resident agent for service of process in New York.

6.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332. Specifically, the amount in controversy exceeds $75,000.00 and the plaintiff and defendants are citizens of different states as set forth above.  Venue is proper because one of the two defendants has its principle place of business in the District and that is the location where the defendants engaged in tortuous conduct and had a final opportunity to prevent the accident that occurred a few weeks later.

## Background

7.      On or about September 3, 2006, CHARVON R. DAVIS-PIERCE was operating a 1996 FORD EXPLORER ("the Ford Explorer") owned by CONSTANCE Y. DAVIS, on the New Jersey Turnpike in Mt. Laurel Twp., Burlington Co.  At that time and place, while NICHOLAS PIERCE, NAYA PIERCE, CONSTANCE DAVIS-BULLOCK, and QUIYANA M. PIERCE-LLOYD, were passengers, the tread separated on the left rear tire and the Ford Explorer rolled over. As a result, QUIYANA M. PIERCE-LLOYD was killed.  The left rear tire was a Firestone ATX P235/75R15 radial tire manufactured by Firestone ("the subject tire") bearing DOT #WZHL1M0134, that was mounted on the left rear of the Ford Explorer being driven by CHARVON R. DAVIS-PIERCE, at the time of the accident, which was designed, developed, tested manufactured, and/or distributed by Defendant, FORD.

8.      The subject of this Complaint is also the 1996 Ford Explorer that was being driven by CHARVON R. DAVIS-PIERCE at the time of the subject accident ("the subject vehicle").  FORD and its dealerships knew that this model vehicle was defective and prone to rollover following tire failure, prior to August 14, 2006.  Additionally, FORD and it dealerships knew that Firestone ATX

tires were unsafe and should be removed from service. CONSTANCE Y. DAVIS brought the vehicle to NEWINS BAY SHORE FORD, INC., on or about August 14, 2006. NEWINS BAY SHORE FORD, INC., failed to remove, fix or warn about the defective tire.

### The Incident

9.      On or about September 3, 2006, CHARVON R. DAVIS-PIERCE, was driving the subject vehicle on the New Jersey Turnpike in Mt. Laurel Twp., Burlington Co. At that time, the tread belt separated on the subject tire and the vehicle rolled over.

10.     The subject tire catastrophically failed as a result of a tread belt separation. The tread belt separation resulted from defective design and manufacture of the subject tire. The subject tire was negligently designed in that it failed to incorporate nylon overlays or nylon belt edge layers in the subject tire to reduce or eliminate belt edge separation and tread belt separation. The negligent manufacture of the tire included improper quality control measures, improper plant practices and procedures, and improper adhesion between steel belts. At the time of the crash, the subject tire was subject to three recalls. As a result of the tire tread separation, the vehicle went out of control, rolled over before coming to final rest, and QUIYANA M. PIERCE-LLOYD was ejected and killed.

### COUNT I
### Strict Liability Against FORD

11.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "10" as if fully set forth at length.

12.     Defendant, FORD, is in the business of manufacturing, selling, and distributing Ford Explorer vehicles and supplying parts to Ford dealerships.

13.     Defendant, FORD, placed the subject Ford Explorer on the market with knowledge

that it would be used without inspection for defects or unknown dangers. FORD knew or should

have known that ultimate users, operators or consumers would not and could not properly inspect the

product for defects and dangerous conditions, and that detection of such defects or dangers would be

beyond the capabilities of such persons.

14. The subject Ford Explorer was defective and unreasonably dangerous to ultimate

users, operators or consumers when sold and distributed by FORD as follows:

> (a) The subject vehicle was defectively designed from a handling and stability standpoint thus creating an unreasonably dangerous propensity to rollover under normal and foreseeable operating conditions;

> (b) The subject vehicle's suspension system, braking system, steering system and geometry were improperly designed, manufactured and assembled thus causing it to have an unreasonable and dangerous propensity to rollover when driven in foreseeable ordinary and emergency maneuvers;

> (c) The subject vehicle was generally defective in its design, manufacture, assembly and warnings because it failed to provide adequate dynamic stability when being operated as advertised and marketed, and was furnished without adequate warnings regarding stability and use;

> (d) Ford failed to warn consumers and its dealers of the dangers associated with Firestone ATX tires;

> (e) Ford failed to warn consumers and its dealers of the danger of using tires older than six (6) years from the date of manufacture; and

> (f) Ford failed to warn its dealers, including Newins Bay Shore Ford, Inc. of Firestone's renotification program issued July, 2006 to remove any Firestone ATX tires from service.

15. On or about September 3, 2006, the time of the incident, the subject Ford Explorer

was substantially unchanged from its condition when sold and distributed.

16. For the reasons set forth above, the subject Ford Explorer was unreasonably

dangerous to foreseeable users, including the passenger, QUIYANA M. PIERCE-LLOYD.

17.     The negligence described above directly and proximately caused the incident and death of QUIYANA M. PIERCE-LLOYD, in that it directly and in natural and continuous sequence, produced or contributed substantially to his injuries and death.

18.     As a result of the death of, QUIYANA M. PIERCE-LLOYD, her Estate suffered damages including funeral expenses due to the Decedent's injury and death that have become a charge against her Estate or were paid by or on behalf of decedent; and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, FORD, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT II
### Negligence Against FORD

19.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "18" as if fully set forth at length.

20.     Defendant, FORD, knew or in the exercise of due care should have known that the subject Ford Explorer would be used without inspection in an unreasonably dangerous condition and would create a foreseeable and unreasonable zone of risk of harm to users, including the passenger, QUIYANA M. PIERCE-LLOYD.

21.     Defendant, FORD, had a duty to properly and adequately design, manufacture, assemble, test, inspect, label, provide adequate warnings for, package, distribute and sell the subject vehicle in a reasonably safe condition so as not to present a danger to members of the general public

who reasonably and expectedly under ordinary circumstances would come into contact with the subject vehicle, including QUIYANA M. PIERCE-LLOYD.

22.    Defendant, FORD, breached its duty by negligently designing, manufacturing, assembling, testing, inspecting, labeling, packaging, failing to warn, distributing and selling the subject Ford Explorer when it was not in a reasonably safe condition for foreseeable use, as follows:

(a)  Failing to design, manufacture, assemble, test and inspect the subject Ford Explorer in such a manner so that it would be dynamically stable, and would handle in a reasonably safe manner under foreseeable circumstances;

(b) Improperly designing, manufacturing, assembling, testing, inspecting, labeling, and packaging the subject Ford Explorer so as to create an unreasonable and dangerous propensity to rollover under normal and foreseeable circumstances and cause a danger of injury or death to users;

(c) Failing to provide reasonable and adequate warnings to the suppliers and users of the subject Ford Explorer to alert users about the vehicle's high center of gravity and propensity to rollover;

(d) Marketing, promoting, advertising and representing that the subject Ford Explorer was suitable for use as a passenger vehicle on the highways and streets of America when, in fact, it could and would rollover on the roadway when subjected to foreseeable driving maneuvers;

(e) Marketing, promoting, advertising and representing that the subject Ford Explorer was a safe and stable utility vehicle when, in fact, FORD knew the vehicle had a clearly demonstrated propensity to rollover in ordinary use;

(f)  Failing to warn or adequately warn consumers and Ford dealerships, including Newins Bay Shore Ford, Inc., of the dangers associated with tire aging or sue of tires six (6) years or older from the date of manufacture;

(g)    Failing to participate in the renotification program issued July 2006, that recommended removal of Firestone ATX tires from service, including the subject tire, due to defective tires still being used despite being recalled twice prior; and

(h)    Failing to warn consumers and Ford dealerships, including Newins Bay Shore Ford, Inc., of Firestone's renotification program issued July 2006,

the recommended removal of Firestone ATX tires in service, including the subject tire, due to defective tires still being used despite being recalled twice prior.

23.     The negligence described above directly and proximately caused the incident and death of QUIYANA M. PIERCE-LLOYD, in that it directly and in natural and continuous sequence, produced or contributed substantially to her injuries and death.

24.     As a result of the death of, QUIYANA M. PIERCE-LLOYD, her Estate suffered damages including funeral expenses due to the Decedent's injury and death that have become a charge against her Estate or were paid by or on behalf of decedent; and all other damages as allowed by Virginia law.

**WHEREFORE,** the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, FORD, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT III
### Strict Liability Against SEARS

25.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "24" as if fully set forth at length.

26.     Defendant, SEARS, is in the business of selling tires, including the subject Firestone ATX tire, that are used by the general public.

27.     Defendant, SEARS, placed the subject tire, on the market with knowledge that it would be used without inspection for defects and dangers. The Defendant knew or should have

known that ultimate users, operators or consumers would not and could not properly inspect this product for defects and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

28.   The subject tire was defective and unreasonably dangerous to ultimate users, operators or consumers, including Plaintiff, when sold and distributed by the Defendant, SEARS, as follows:

(a)   The Subject Tire was manufactured without adequate quality control measures and inappropriate manufacturing procedures and processes, including, but not limited to the use of over-age rubber stock, inappropriate exposure of materials to moisture during the manufacturing process, the swabbing of rubber materials with solvent, improper material handling of belt wire, improper final inspection and improper repairs, including but not limited to, puncturing of finished tires with awls.   Said inappropriate quality control measures and inappropriate manufacturing practices and procedures contributed to the in-service failure and tread belt separation of the Subject Tire;

(b)   The Subject Tire was defective in manufacture in that it lacked proper adhesion of the steel belts to surrounding material resulting in tread belt separation and catastrophic failure during normal use;

(c)   The Subject Tire was defective in design in that it failed to incorporate gum edge strips, nylon overlays, nylon belt edge layers, or nylon safety belts to reduce the hazard of tread belt separation;

(d)   The specifications for the Subject Tire were improper; and

(e)   The subject tire was recalled for safety concerns at the time it was sold by SEARS.

29.   The defects in the subject tire as set forth in Paragraph 28 were patent defects and/or defects and dangers that the Defendant, SEARS, could discover through the exercise of reasonable care, and either correct or warn of, prior to the sale and distribution of the tire.

30.     On or about September 3, 2006, the time of the incident, the subject tire was substantially unchanged from its condition, as set forth in Paragraph 28, when sold and distributed by the Defendant, SEARS to the vehicle owner, CONSTANCE Y. DAVIS.

31.     For the reasons set forth above, the subject Firestone ATX tire was unreasonably dangerous to foreseeable users, including the Plaintiff, who was a passenger in the vehicle and used the tire in an ordinary and foreseeable manner.

32.     The defects described above directly and proximately caused the incident and death QUIYANA M. PIERCE-LLOYD, in that it directly and in natural and continuous sequence, produced or contributed substantially to her injuries and death.

33.     As a result of the death of, QUIYANA M. PIERCE-LLOYD, her Estate suffered damages including funeral expenses due to the Decedent's injury and death that have become a charge against her Estate or were paid by or on behalf of decedent; and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, SEARS, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT IV
### Negligence Against SEARS

34.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "33" as if fully set forth at length.

35. SEARS is in the business of servicing vehicles and selling tires for the general public.

36. The owner of the vehicle, CONTANCE Y. DAVIS, took the vehicle to Defendant, SEARS, for service and inspection, including its tires.

37. SEARS inspected and serviced the Subject Vehicle, and its tires and wheels.

38. SEARS owed a duty to the Plaintiff, to inspect the condition of the Subject Tire on the vehicle for defects and dangerous conditions that SEARS could have discovered through the exercise of reasonable care, and to warn of the defect and dangers that existed while operating the vehicle with a tire that contained a pending tread separation.

39. At the time SEARS serviced the Subject Vehicle and its components, including the Subject Tire, they knew or should have known, that it required replacement, because it was in a condition such that separation of the tread was imminent, and SEARS knew or should have known that these conditions constituted defects or dangers that posed an unreasonable risk of harm to users, including Plaintiff, during ordinary and foreseeable driving maneuvers.

40. For the reasons set forth above, the Subject Tire was unreasonably dangerous to foreseeable users, including Plaintiff, who used the Subject Tire in an ordinary and foreseeable manner.

41. At the time SEARS serviced the Subject Tire, they breached their duty of care in one or more of the following ways:

(a) negligently inspecting or failing to inspect the Subject Tire so that defects and dangerous conditions would be discovered;

(b) negligently failing to replace the Subject Tire with a non-defective tire;

(c) negligently warning or failing to warn of the dangers and defects in

the Subject Tire of which Defendant, SEARS, either knew or should have known existed;

(d)     negligently warning or failing to warn of the signs of tread belt separation and the consequences thereof; and

(e)     negligently selling the subject Firestone ATX tire when the tire was recalled for safety reasons.

42.     The negligence described above directly and proximately caused the incident and injuries and death sustained by Plaintiff in that it directly and in natural and continuous sequence produced or contributed substantially to her death.

43.     As a direct and proximate result of the foregoing conduct of the Defendants, QUIYANA M. PIERCE-LLOYD sustained injuries that resulted in her death.  As a result of her death, the Estate of QUIYANA M. PIERCE-LLOYD endured pain and suffering damages before her death and medical or funeral expenses due to the decedent's injury or death that have become a charge against the estate or that were paid by or on behalf of decedent; SHAWN LLOYD, the surviving natural mother of QUIYANA M. PIERCE-LLOYD, and other beneficiaries, have suffered damages including sorrow, mental anguish and solace, society as companionship and lost income of the decedent as well as services, protection, care and assistance provided by decedent due to the death of QUIYANA M. PIERCE-LLOYD, and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, SEARS, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

## COUNT V
### Strict Liability Against BFS

44.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1"

through "43" as if fully set forth at length.

45.    Defendant, BFS, is in the business of selling tires, including the subject Firestone

ATX tire, that are used by the general public.

46.    Defendant, BFS, placed the subject tire, on the market with knowledge that it would

be used without inspection for defects and dangers.  The Defendant knew or should have known that

ultimate users, operators or consumers would not and could not properly inspect this product for

defects and dangerous conditions, and that detection of such defects and dangers would be beyond

the capabilities of such persons.

47.    The subject tire was defective and unreasonably dangerous to ultimate users, operators

or consumers, including Plaintiff, when sold and distributed by the Defendant, BFS, as follows:

(a)    The Subject Tire was manufactured without adequate quality control measures and inappropriate manufacturing procedures and processes, including, but not limited to the use of over-age rubber stock, inappropriate exposure of materials to moisture during the manufacturing process, the swabbing of rubber materials with solvent, improper material handling of belt wire, improper final inspection and improper repairs, including but not limited to, puncturing of finished tires with awls.   Said inappropriate quality control measures and inappropriate manufacturing practices and procedures contributed to the in-service failure and tread belt separation of the Subject Tire;

(b)    The Subject Tire was defective in manufacture in that it lacked proper adhesion of the steel belts to surrounding material resulting in tread belt separation and catastrophic failure during normal use;

(c)     The Subject Tire was defective in design in that it failed to incorporate gum edge strips, nylon overlays, nylon belt edge layers, or nylon safety belts to reduce the hazard of tread belt separation;

(d)     The specifications for the Subject Tire were improper; and

(e)     The subject tire was recalled for safety concerns at the time it was sold by BFS.

48.     The defects in the subject tire as set forth in Paragraph 47 were patent defects and/or defects and dangers that the Defendant, BFS, could discover through the exercise of reasonable care, and either correct or warn of, prior to the sale and distribution of the tire.

49.     On or about September 3, 2006, the time of the incident, the subject tire was substantially unchanged from its condition, as set forth in Paragraph 47, when sold and distributed by the Defendant, BFS, to the vehicle owner, CONSTANCE Y. DAVIS.

50.     For the reasons set forth above, the subject Firestone ATX tire was unreasonably dangerous to foreseeable users, including the Plaintiff, who was a passenger in the vehicle and used the tire in an ordinary and foreseeable manner.

51.     The defects described above directly and proximately caused the incident and death QUIYANA M. PIERCE-LLOYD, in that it directly and in natural and continuous sequence, produced or contributed substantially to her injuries and death.

52.     As a result of the death of, QUIYANA M. PIERCE-LLOYD, her Estate suffered damages including funeral expenses due to the Decedent's injury and death that have become a charge against her Estate or were paid by or on behalf of decedent; and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the

Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, BFS,

jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other

relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**COUNT VI**
**Negligence Against BFS**

53.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1"

through "52" as if fully set forth at length.

54.     BFS is in the business of servicing vehicles and selling tires for the general public.

55.     The vehicle owner, CONTANCE Y. DAVIS, took the vehicle to Defendant, BFS, for

service and inspection, including its tires.

56.     BFS inspected and serviced the Subject Vehicle, and its tires and wheels.

57.     BFS owed a duty to the Plaintiff, to inspect the condition of the Subject Tire on the

vehicle for defects and dangerous conditions that BFS could have discovered through the exercise of

reasonable care, and to warn of the defect and dangers that existed while operating the vehicle with a

tire that contained a pending tread separation.

58.     At the time BFS serviced the Subject Vehicle and its components, including the

Subject Tire, they knew or should have known, that it required replacement, because it was in a

condition such that separation of the tread was imminent, and BFS knew or should have known that

these conditions constituted defects or dangers that posed an unreasonable risk of harm to users,

including Plaintiff, during ordinary and foreseeable driving maneuvers.

59.     For the reasons set forth above, the Subject Tire was unreasonably dangerous to

foreseeable users, including Plaintiff, who used the Subject Tire in an ordinary and foreseeable

manner.

60.     At the time BFS serviced the Subject Tire, they breached their duty of care in one or

more of the following ways:

(a)     negligently inspecting or failing to inspect the Subject Tire so that
defects and dangerous conditions would be discovered;

(b)     negligently failing to replace the Subject Tire with a non-defective
tire;

(c)     negligently warning or failing to warn of the dangers and defects in
the Subject Tire of which Defendant, SEARS, either knew or should
have known existed;

(d)     negligently warning or failing to warn of the signs of tread belt
separation and the consequences thereof; and

(e)     negligently selling the subject Firestone ATX tire when the tire was
recalled for safety reasons.

61.     The negligence described above directly and proximately caused the incident and

injuries and death sustained by Plaintiff in that it directly and in natural and continuous sequence

produced or contributed substantially to her death.

62.     As a direct and proximate result of the foregoing conduct of the Defendants,

QUIYANA M. PIERCE-LLOYD sustained injuries that resulted in her death.  As a result of her

death, the Estate of QUIYANA M. PIERCE-LLOYD endured pain and suffering damages before her

death and medical or funeral expenses due to the decedent's injury or death that have become a

charge against the estate or that were paid by or on behalf of decedent; SHAWN LLOYD, the

surviving natural mother of QUIYANA M. PIERCE-LLOYD, and other beneficiaries, have suffered

damages including sorrow, mental anguish and solace, society as companionship and lost income of

the decedent as well as services, protection, care and assistance provided by decedent due to the

death of QUIYANA M. PIERCE-LLOYD, and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, SEARS, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**COUNT VII**
**Strict Liability Against MMG**

63.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "62" as if fully set forth at length.

64.     Defendant, MMG, is in the business of selling tires, including the subject Firestone ATX tire, that are used by the general public.

65.     Defendant, MMG, placed the subject tire, on the market with knowledge that it would be used without inspection for defects and dangers. The Defendant knew or should have known that ultimate users, operators or consumers would not and could not properly inspect this product for defects and dangerous conditions, and that detection of such defects and dangers would be beyond the capabilities of such persons.

66.   The subject tire was defective and unreasonably dangerous to ultimate users, operators or consumers, including Plaintiff, when sold and distributed by the Defendant, SEARS, as follows:

> (a)     The Subject Tire was manufactured without adequate quality control measures and inappropriate manufacturing procedures and processes, including, but not limited to the use of over-age rubber stock, inappropriate exposure of materials to moisture during the manufacturing process, the swabbing of rubber materials with solvent, improper material handling of

belt wire, improper final inspection and improper repairs, including but not limited to, puncturing of finished tires with awls.   Said inappropriate quality control measures and inappropriate manufacturing practices and procedures contributed to the in-service failure and tread belt separation of the Subject Tire;

(b)     The Subject Tire was defective in manufacture in that it lacked proper adhesion of the steel belts to surrounding material resulting in tread belt separation and catastrophic failure during normal use;

(c)     The Subject Tire was defective in design in that it failed to incorporate gum edge strips, nylon overlays, nylon belt edge layers, or nylon safety belts to reduce the hazard of tread belt separation;

(d)     The specifications for the Subject Tire were improper; and

(e)     The subject tire was recalled for safety concerns at the time it was sold by MMG.

67.     The defects in the subject tire as set forth in Paragraph 66 were patent defects and/or defects and dangers that the Defendant, MMG, could discover through the exercise of reasonable care, and either correct or warn of, prior to the sale and distribution of the tire.

68.     On or about September 3, 2006, the time of the incident, the subject tire was substantially unchanged from its condition, as set forth in Paragraph 66, when sold and distributed by the Defendant, MMG to the vehicle owner's daughter and permissible user, CHARVON R DAVIS-PIERCE.

69.     For the reasons set forth above, the subject Firestone ATX tire was unreasonably dangerous to foreseeable users, including the Plaintiff, who was a passenger in the vehicle and used the tire in an ordinary and foreseeable manner.

70.     The defects described above directly and proximately caused the incident and death

QUIYANA M. PIERCE-LLOYD, in that it directly and in natural and continuous sequence, produced or contributed substantially to her injuries and death.

71.     As a result of the death of, QUIYANA M. PIERCE-LLOYD, her Estate suffered damages including funeral expenses due to the Decedent's injury and death that have become a charge against her Estate or were paid by or on behalf of decedent; and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, SEARS, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

**COUNT VIII**
**Negligence Against MMG**

72.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "71" as if fully set forth at length.

73.     MMG is in the business of servicing vehicles and selling tires for the general public.

74.     The vehicle owner's daughter, CHARVON R. DAVIS-PIERCE, took the vehicle to Defendant, MMG, for service and inspection, including its tires.

75.     MMG inspected and serviced the Subject Vehicle, and its tires and wheels.

76.     MMG owed a duty to the Plaintiff, to inspect the condition of the Subject Tire on the vehicle for defects and dangerous conditions that MMG could have discovered through the exercise of reasonable care, and to warn of the defect and dangers that existed while operating the vehicle

with a tire that contained a pending tread separation.

77.     At the time MMG serviced the Subject Vehicle and its components, including the

Subject Tire, they knew or should have known, that it required replacement, because it was in a

condition such that separation of the tread was imminent, and MMG knew or should have known

that these conditions constituted defects or dangers that posed an unreasonable risk of harm to users,

including Plaintiff, during ordinary and foreseeable driving maneuvers.

78.     For the reasons set forth above, the Subject Tire was unreasonably dangerous to

foreseeable users, including Plaintiff, who used the Subject Tire in an ordinary and foreseeable

manner.

79.     At the time MMG serviced the Subject Tire, they breached their duty of care in one or

more of the following ways:

> (a)     negligently inspecting or failing to inspect the Subject Tire so that
>         defects and dangerous conditions would be discovered;
>
> (b)     negligently failing to replace the Subject Tire with a non-defective
>         tire;
>
> (c)     negligently warning or failing to warn of the dangers and defects in
>         the Subject Tire of which Defendant, MMG, either knew or should
>         have known existed;
>
> (d)     negligently warning or failing to warn of the signs of tread belt
>         separation and the consequences thereof;
>
> (e)     negligently selling the subject Firestone ATX tire when the tire was
>         recalled for safety reasons; and
>
> (f)     negligently selling defective used tires to consumers, including the
>         subject tire.

80.     The negligence described above directly and proximately caused the incident and

injuries and death sustained by Plaintiff in that it directly and in natural and continuous sequence produced or contributed substantially to her death.

81.     As a direct and proximate result of the foregoing conduct of the Defendants, QUIYANA M. PIERCE-LLOYD sustained injuries that resulted in her death.  As a result of her death, the Estate of QUIYANA M. PIERCE-LLOYD endured pain and suffering damages before her death and medical or funeral expenses due to the decedent's injury or death that have become a charge against the estate or that were paid by or on behalf of decedent; SHAWN LLOYD, the surviving natural mother of QUIYANA M. PIERCE-LLOYD, and other beneficiaries, have suffered damages including sorrow, mental anguish and solace, society as companionship and lost income of the decedent as well as services, protection, care and assistance provided by decedent due to the death of QUIYANA M. PIERCE-LLOYD, and all other damages as allowed by Virginia law.

**WHEREFORE**, the Plaintiff, SHAWN LLOYD, Individually and as Administrator of the Estate of QUIYANA M. PIERCE-LLOYD, deceased, demands judgment against Defendant, MMG, jointly and severally, for compensatory damages, costs, interest as allowed by law, and for such other relief as the Court deems just and demands a trial by jury on all issues so triable as a matter of right.

Dated: August 26, 2008

Andrew J. Maloney (AM8684)
KREINDLER & KREINDLER LLP
100 Park Avenue
New York, NY 10017
(212) 687-8181 – Tel.
(212) 972-9432 – Fax

-and-

Richard Newsome, Esq.
Frank Melton, Esq.
NEWSOME LAW FIRM
20 North Orange Avenue, Suite 800
Orlando, Florida  32801
Telephone: (407) 648-5977
Facsimile: (407) 648-5282

Attorneys for Plaintiff

EXHIBIT
A

 

# CERTIFICATE OF QUALIFICATION

## Circuit Court of Fairfax County, Virginia

Fiduciary Number FI-2007-0000719

I, **John T. Frey**, Clerk of the Circuit Court of Fairfax County, Virginia, the same being a Court of Probate and of Record and having a seal, do hereby certify that it appears of record in my office pursuant to law that:

Shawn Elyce Lloyd

duly qualified in this court as Administrator for the estate of Quiyana Nichele Pierce-Lloyd, deceased.

A bond in the amount of $100.00 has been posted.

The powers of the fiduciary(ies) named above continue in full force and effect.

IN TESTIMONY WHEREOF I have hereunto set my hand, and affixed the seal of said Court hereto, at Fairfax, Virginia this 25th day of April, 2007.

**TESTE: JOHN T. FREY, CLERK**

By: _____
Deputy Clerk